UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRADLEE JAMES MYERS,

Plaintiff,

v. Case No: 5:15-cv-95-Oc-DNF

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**OPINION AND ORDER**

Plaintiff, Bradlee James Myers, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI") benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for SSI on November 21, 2011, alleging disability due to sickle cell disease, a learning disability, and hyperactivity disorder. (Tr. 14, 187). Plaintiff's application was denied initially on January 27, 2012, and on reconsideration on May 7, 2012. (Tr. 97-102, 105-09). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Douglas A. Walker (the "ALJ") on May 10, 2013. (Tr. 32-50). On June 27, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (Tr. 14-31). Plaintiff appealed the ALJ's decision and, on December 24, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 2-5). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 25, 2015.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 21, 2011, the date of Plaintiff's application. (Tr. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder, speech impairment, and status post fracture of the left forearm. (Tr. 16-17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 41). The ALJ noted that while Plaintiff's counsel argued that the evidence shows that Plaintiff's impairment meets Listing 12.05C for mental retardation, the ALJ found no evidence to show the existence of any impairments that meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations. (Tr. 17).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except the claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally, is able to stand and walk for 6 hours, and sit for a total of 6 hours in an 8 hour workday. The claimant should avoid frequent ascending and descending stairs, avoid hazards in the workplace, and should be restricted to a relatively clean work environment. He is further limited to occasional balancing, stooping, crouching, kneeling and crawling, but should avoid climbing of ropes, scaffolds, or ladders exceeding 6 feet. The claimant also has moderate non-exertional limitations which limit his ability to concentrate upon complex and detailed tasks However, he is able to understand, remember, and carry out simple job instructions, make work related judgments and decisions, respond appropriately to coworkers and supervisors and work situations, and deal with changes in a routine work setting. Specifically, the claimant is limited to simple and unskilled or low semi-skilled work under the SVP of 3. Put another way, the claimant is limited to tasks that are performed so frequently as to be considered routine even though the tasks themselves may not be simple. However, the claimant should avoid stressful situations, such as working with co-workers in a team type of setting and working directly with the public. Though he may have some indirect contact, he ought to avoid direct contact. The claimant is limited to work in an environment where he would be required to make decisions and use little judgments, and should avoid environments where interpersonal interaction or discussion with coworkers is required.

(Tr. 19). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 25). At step five, the ALJ relied upon the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 26). The ALJ concluded that Plaintiff has not been under a disability since November 21, 2011. (Tr. 27).

## II. Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to find that Plaintiff's extremely low intellectual functioning was a severe impairment; (2) whether the ALJ erred by failing to specify the weight he accorded to the opinion of consultative examiner Mary-Catherine Segota, Psy.D.; (3) whether the ALJ's credibility finding is not supported by substantial evidence because the ALJ erred by failing to properly weigh and consider the opinion of Plaintiff's teacher; and (4) whether the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical question. The Court will address each issue in turn.

### A. Whether the ALJ erred by failing to find that Plaintiff's extremely low intellectual functioning was a severe impairment.

Plaintiff argues that although the ALJ evaluated Plaintiff's impairments under Listing 12.05 at Step 3, the ALJ failed to provide any discussion or explanation for failing to find that Plaintiff's extremely low intellectual functioning was a severe impairment at Step 2. (Doc. 20 p. 8). Plaintiff contends that the ALJ's failure at Step 2 is harmful because the ALJ did not include any obvious limitations corresponding with this impairment, showing that he considered the impairment despite not finding it severe. (Doc. 20 p. 9). Plaintiff contends that his extremely low intellectual functioning severely impacts his ability to read, write, and utilize math skills in the workplace. (Doc. 20 p. 9).

Defendant responds that any failure by the ALJ to include Plaintiff's intellectual functioning as a separate, severe impairment is no more than harmless error. (Doc. 21 p. 3). Defendant contends that nothing requires an ALJ to identify every severe impairment at Step 2 so long as the LAJ has identified at least one other severe impairment. (Doc. 21 p. 3). Further, Defendant argues that the ALJ addressed Plaintiff's intellectual impairment at subsequent steps of the sequential evaluation process, at Step 3 when considering whether Plaintiff met Listing 12.05,

the listing for intellectual disability, and at Step 4 when formulating Plaintiff's RFC. (Doc. 21 p. 4).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Even if the ALJ erred by not indicating that an impairment was "severe," that error is harmless if the ALJ concludes that the claimant had another severe impairment because "that finding is all that step two requires." *Id.* at 824-25. If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the Court finds that any error the ALJ may have committed by failing to find that Plaintiff's low intellectual functioning was a severe impairment was harmless. At Step 2 of the sequential process the ALJ found that Plaintiff had the severe impairments of ADHD, speech impairment, and status post fracture of the left forearm. After making this finding at Step 2, the ALJ proceeded to Step 3 and specifically considered whether Plaintiff's intellectual functioning was so low as to meet a listing for intellectual disability, i.e., Listing 12.05. (Tr. 17, 18-19). Further, at Step 4, the ALJ considered Plaintiff's intellectual functioning by discussing the grades Plaintiff received in high school, the report from Dr. Segota, the consultative mental health examiner who indicated in July 2011 that Plaintiff had an estimated full-scale IQ score of 68 and his testing revealed abilities in the borderline, low average, or extremely low range. (Tr. 23, 259, 261). While the ALJ did not include Plaintiff's low intellectual functioning as a severe impairment, the ALJ's decision shows that the ALJ still considered Plaintiff's low intellectual

functioning during the subsequent steps of the sequential evaluation process. Accordingly, the Court will not remand this case due to the ALJ's decision to not include Plaintiff's low intellectual functioning as a severe impairment.

**B. Whether the ALJ erred by failing to specify the weight he accorded to the opinion of consultative examiner Mary-Catherine Segota, Psy.D.**

Plaintiff argues that while the ALJ discussed Dr. Segota's examination results in his narrative discussion, the ALJ failed to provide any statement or indications regarding the weight he afforded her opinions regarding Plaintiff's abilities to solve numerical problems and manage funds. (Doc. 20 p. 10). Plaintiff contends that because the ALJ did not adopt a limitation finding corresponding to Dr. Segota's opinion as to Plaintiff's limited ability to solve numerical problems and manage funds, the ALJ apparently rejected Dr. Segota's opinion without explanation. (Doc. 20 p. 10). Plaintiff argues that the case should be remanded due to the ALJ's failure to specifically weigh or otherwise explain the extent to which he relied on Dr. Segota's opinion. (Doc. 20 p. 11).

In response, Defendant acknowledges that the ALJ did not expressly state the weight given to Dr. Segota's opinion, Defendant argues that the ALJ's failure to specify the weight is harmless error as Dr. Segota's opinion does not suggest more restrictive limitations than those determined by the ALJ. (Doc. 21 p. 7). Defendant contends that the ALJ was not required to adopt every conclusion from Dr. Segota's report and include it in the RFC. (Doc. 21 p. 9). Defendant argues that Plaintiff has not shown how Dr. Segota's finding that Plaintiff may have difficulty in academic areas, including solving numerical problems, would establish more restrictive limitations than those determined by the ALJ. (Doc. 21 p. 9-10).

The record reflects that Dr. Segota examined Plaintiff on July 20, 2011. (Tr. 258-62). Plaintiff reported he had been in speech classes throughout school due to an articulation problem, had obtained "variable" grades in regular classes, and had been in special education classes from

elementary school to high school. (Tr. 257). Plaintiff reported he lives with his mother, is able to perform hygiene tasks independently, and spends the day playing football or basketball and watching television; he cannot concentrate on a two hour movie, does not pay bills or manage a checking account, does not drive, and needs reminders sometimes to do his chores. (Tr. 258). Dr. Segota observed "significant hyperactivity" during the evaluation, variable concentration, and poor articulation. (Tr. 258). He was not able to repeat two of five digits backwards, recall two out of three words after a delay without assistance, had difficulty with a serial sevens test, could not do multiplication or division tasks, and had impaired concentration and abstract verbal reasoning. (Tr. 259). Cognitive testing showed Verbal Comprehension of 78 (borderline), Perceptual Reasoning of 67 (extremely low), Working Memory of 66 (extremely low), Processing Speed of 81 (low average), and a Full Scale IQ of 68 (extremely low). (Tr. 260-61). Dr. Segota noted Plaintiff had a general weakness in concentration, attention, and short-term auditory memory that may impede his performance in solving numerical problems. (Tr. 261). Dr. Segota diagnosed "extremely low intellectual functioning" and opined Plaintiff would have some difficulty managing funds without significant supervision. (Tr. 262).

An ALJ is required to consider all of the evidence in the case record when he makes his determination. 20 C.F.R. §404.1520(a), *Brunson v. Astrue*, 850 F. Supp.2d 1293, 1304 (M.D. Fla. 2011). An ALJ must consider the medical opinions that were submitted in the record as well as other relevant evidence. 20 C.F.R. §404.1527(b). Medical opinions are statements from physicians and may include a claimant's symptoms, diagnosis and prognosis. 20 C.F.R. §404.1527(a)(2). The ALJ is required to state with particularity the weight he gave the different medical opinions and the reasons therefore. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1179 (11th Cir. 2011)). Without such a statement by the ALJ, a court cannot determine if the merits of a claim are rational and supported by substantial evidence. *Winschel*, 631 F.3d at 1179.

In his decision, the ALJ thoroughly discussed Dr. Segota's Psychological Evaluation of Plaintiff and noted that while Dr. Segota found that Plaintiff had some deficiencies, they were not as disabling as Plaintiff alleged:

> While the claimant's allegations to the consultative examiner are largely parallel to his allegations here, the consultative examiner's notes and assessment does not corroborate the allegations fully. The consultative examiners noted that he evidenced significant hyperactivity during the evaluation but that the claimant's speech was fluent, coherent and normal in volume, that he was able to answer all questions and appeared to understand the process (Exhibit 2F at 2). The claimant maintained good eye contact, presented with a cooperative nature and good rapport, orientated, with clear consciousness but with variable concentration (Exhibit 2F at 2). Dr. Segota noted that the claimant's thought rate was normal, that he demonstrated poor articulation but had adequate use of grammar (Exhibit 2F at 2).
>
> Testing did not corroborate the claimant's allegations fully and while some deficiencies were noted, the severity of these was not as disabling as the claimant alleges. For instance, the claimant's memory testing did nto reveal any serious deficiency and he was able to repeat five digits forwards and two digits backwards, was able to remember two of three words after five minutes, and the third word when given a list of three to choose from (Exhibit 2F at 3). His immediate, recent and long-term memory were intact, but Dr. Segota noted that the claimant's concentration was somewhat impaired and that the claimant had difficulty with serial sevens (Exhibit 2F at 3). While the claimant was unable to perform multiplication and division mathematical calculations, he was able to conduct simple addition and subtraction (Exhibit 2F at 3). Based upon his thorough examination and testing, Dr. Segota estimated that the claimant's full scale IQ was 68 and that testing revealed his abilities to be borderline, low average or extremely low (Exhibit 2F at 3). Dr. Segota stated that the claimant's general cognitive ability is within the extremely low range of intellectual functioning and that he may experience difficulty in keeping up with his peers in a variety of situations that require thinking and reasoning abilities (Exhibit 2F at 4). The claimant's verbal reasoning abilities were borderline according to testing conducted at the time also (Exhibit 2F at 5). The claimant's ability in processing simple or routine visual material without making errors was in the low average range (Exhibit 2F at 5). IN spite of these findings, Dr. Segota reported that "the

> claimant is able to self-structure and execute activities of daily living" (Exhibit 2F at 2). Dr. Segota indicated that upon conduction of the WAIS-IV testing, the claimant's general cognitive ability appeared to be extremely low (FSIQ score of 68) and that the claimant would find it difficult to manage funds (Exhibit 2F at 5-6). Estimated the claimant's GAF score to be 60 (Exhibit 2F at 6).

(Tr. 22-23). The ALJ did not state the weight accorded to this opinion, but explained later in his decision that "unless otherwise indicated, the views of all treating providers and third parties have been given some weight in this decision." (Tr. 25).

Here, the Court finds that while the ALJ may have erred by failing to *specifically* state the weight he accorded Dr. Segota's opinion, in light of the ALJ's thorough treatment of Dr. Segota's opinion, the ALJ's generalized statement that the opinion was given some weight, and the ALJ's assessment of significant nonexertional limitations in his RFC determination, remand is inappropriate. As a one-time examining psychologist, Dr. Segota's opinion was not entitled to any special deference and the ALJ was not required to adopt her limitation findings. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (providing that an ALJ does not have to defer to the opinion of a physician who conducted a single examination and who was not a treating physician). Plaintiff has failed to demonstrate that his condition caused mental limitations greater than found by the ALJ. Accordingly, the Court will not remand this case for the ALJ to specifically state the weight he accorded Dr. Segota's opinion.

**C. Whether the ALJ's credibility finding is not supported by substantial evidence because the ALJ erred by failing to properly weigh and consider the opinion of Plaintiff's teacher.**

In explaining his credibility finding, the ALJ stated that he accorded "no weight" to Exhibit 5F (Tr. 291-92), an undated, handwritten statement which indicates that Plaintiff is intellectually disabled and that his speech impairment makes it difficult for him to be understood, that he cannot perform well on tests and struggles with drawing conclusions and making inferences, and has

difficulties in reading comprehension and math. (Tr. 23). The ALJ explained that he accorded this opinion no weight because he could not "confirm who provided this information or when." (Tr. 23).

Plaintiff argues that the ALJ's explanation is not adequate to reject the statement because even a cursory comparison of the handwriting from the note with the handwriting from a form provided by Plaintiff's twelfth grade teacher in another exhibit indicates that this rejected note was from that teacher. (Doc. 20 p. 11). Plaintiff contends that the ALJ failed to provide any rationale related to whether this note was inconsistent with the evidence in order to justify rejecting it when assessing Plaintiff's RFC. (Doc. 20 p. 13). In addition, Plaintiff argues the ALJ's duty to develop the record required the ALJ to inquire into the statement's origin rather than simply reject it. (Doc. 20 p. 13). Defendant contends that while Plaintiff disagrees with the ALJ's determination, Plaintiff has failed to show any error. (Doc. 21 p. 12).

Here, the Court does not find it appropriate to remand this case due to the ALJ's decision to accord an undated, unsigned, four-sentence opinion "no weight." The ALJ explained his reasoning and while Plaintiff disagrees with the ALJ's decision, Plaintiff has failed to show the ALJ committed legal error. Plaintiff contends the ALJ should have inquired as to the origin of the statement and his failure to do so was a dereliction of his duty to develop the record. The ALJ's decision, however, demonstrates that the ALJ specifically considered the notes from Plaintiff's teachers, i.e., the source from which Plaintiff contends the unsigned note originates. Plaintiff has failed to show that even if the ALJ accorded great weight to the undated, unsigned opinion that Plaintiff' RFC would contain greater limitations. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (providing that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded

to [the Commissioner] for further development of the record.”). Accordingly, the Court will not disturb the ALJ’s treatment of Exhibit 5F on appeal.

**D. Whether the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical question.**

Plaintiff’s final issue relates to her previous three. Plaintiff contends that the ALJ erred by relying on vocational expert testimony that was elicited in response to an incomplete hypothetical question. (Doc. 20 p. 14). Specifically, Plaintiff contends that the hypothetical question posed to the vocational expert was incomplete because the ALJ failed to include limitations in Plaintiff’s abilities to perform math and reading tasks as supported by Dr. Segota’s opinion, Exhibit 5F, and Plaintiff’s school records. (Doc. 20 p. 14). Defendant responds that the ALJ properly relied on the testimony of the vocational expert because the ALJ’s hypothetical question was consistent with the ALJ’s RFC. (Doc. 21 p. 13).

“At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Winchel*, 631 F.3d at 1180 (citing *Phillips v. Barnhart*, 357 F.3d 1232,1239 (11th Cir. 2004). An ALJ may use the Medical Vocation Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform. *Id*. If the ALJ decides to use a vocational expert, for the vocational expert’s opinion to constitute substantial evidence, “the ALJ must pose a hypothetical question which comprises all of the claimant’s impairments.” *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

Here, Plaintiff does not challenge that the hypothetical question posed by the ALJ contained all of the limitations determined by the ALJ, but that the ALJ’s hypothetical question should have contained greater limitations than found by the ALJ in his RFC determination. As explained in the preceding sections, however, Plaintiff has failed to demonstrate that the ALJ’s

RFC finding was not supported by substantial evidence. Accordingly, the Court rejects Plaintiff's argument that remand is appropriate because the ALJ improperly relied on vocational expert testimony at Step 5.

## III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties